1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY W. DINSMORE,

                     Plaintiff,

       v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                  Defendant.

Case No. C15-1129-MJP

**ORDER AFFIRMING THE
COMMISSIONER'S FINAL
DECISION**

      Larry W. Dinsmore seeks review of the denial his application for Supplemental Security

Income and Disability Insurance Benefits.  Mr. Dinsmore contends the ALJ erred in evaluating

the medical evidence, the lay testimony and his own credibility.  Dkt. 13 at 1.  Mr. Dinsmore

also argues the ALJ erred by failing to fully and fairly develop the record.  *Id.*  Mr. Dinsmore

contends these errors resulted in a residual functional capacity (RFC) determination that failed to

account for all of his limitations.  *Id.*  Due to these errors Mr. Dinsmore also argues the ALJ

failed to show there were other jobs in the national economy that he could perform.  *Id.*  As

discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the

case with prejudice.

**BACKGROUND**

      In March 2012, Mr. Dinsmore applied for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI), alleging disability as of December 13, 2010.  Tr. 184-193.

Mr. Dinsmore's applications were denied initially and on reconsideration.  Tr. 77-114.  After the

ALJ conducted a hearing on October 30, 2013, the ALJ issued a decision finding Mr. Dinsmore

not disabled.  Tr. 22-32.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Mr. Dinsmore has not engaged in substantial gainful activity since December 13, 2010, the alleged onset date.

**Step two:**  Mr. Dinsmore has the following severe impairments: venous sinus thrombosis, headaches, two missing toes left foot, obesity, and obstructive sleep apnea.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Mr. Dinsmore can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  "He can frequently climb balance due [sic] kneel and crouch.  He can occasionally crawl.  He can occasionally climb ladders ropes and scaffolds.  He can frequently handle or finger bilaterally.  He would be off task up to 10%.  He would have sick days averaging less than one time per month.  He can perform unskilled work with simple repetitive tasks."  Tr. 25.

**Step four:**  Mr. Dinsmore cannot perform past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Mr. Dinsmore can perform, he is not disabled.

Tr. 22-32.  The Appeals Council denied Mr. Dinsmore's request for review making the ALJ's

decision the Commissioner's final decision.  Tr. 1-7.[3]

## DISCUSSION

**A.      Medical Evidence**

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 2

1       **1.      *Summary of the Medical Evidence***

2           Mr. Dinsmore first offers his own summary of the medical records which, he contends,

3   demonstrates the ALJ misevaluated the medical evidence.  Dkt. 13 at 8.  Specifically Mr.

4   Dinsmore contends the evidence "confirms that he has cerebral venous thrombosis, which can

5   reasonably be expected to cause severe headaches and that the headaches have persisted despite

6   ongoing medical treatment."  *Id.* at 8.  He contends the evidence also shows he has sleep apnea,

7   which "can reasonably be expected to cause the constant fatigue described in his testimony."  *Id.*

8   Finally, he indicates that although "none of his treating physicians have fully assessed his

9   functional limitations, none of them have questioned the legitimacy of his complaints of

10  headaches."  *Id.*

11          None of Mr. Dinsmore's statements identify any error in the ALJ's reasoning or

12  interpretation of the medical evidence.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir.

13  2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009)

14  ("The burden is on the party claiming error to demonstrate not only the error, but also that it

15  affected his 'substantial rights,' which is to say, not merely his procedural rights.")); *Indep.*

16  *Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding the court

17  cannot manufacture arguments for an appellant and will review only issues argued specifically

18  and distinctly in a party's opening brief).  Here, the ALJ included venous sinus thrombosis,

19  headaches and sleep apnea as severe impairments and considered Mr. Dinsmore's complaints of

20  headaches and fatigue in her opinion.  Tr. 24, 26-30.  Mr. Dinsmore's argument on these issues

21  fails to identify any error in the ALJ's analysis.  Moreover, The ALJ did not find that Mr.

22  Dinsmore's physicians questioned the legitimacy of his headache complaints and Mr.

23  Dinsmore's conclusory statement to that effect is not linked to any specific argument or

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 3

challenge to the ALJ's evaluation of the medical evidence.  *See Indep. Towers of Washington*, 350 F.3d at 929-30 ("'[a] bare assertion of an issue does not preserve a claim'" rather "[w]e require contentions to be accompanied by reasons" (quoting *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001))).

Similarly, Mr. Dinsmore's mere recitation of medical records and conclusory statement that the ALJ erred in failing to properly evaluate the evidence is insufficient to establish error. *See id.*; *Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).  At most, Mr. Dinsmore's recitation of the medical records offers an alternative interpretation of the evidence but fails to establish the ALJ's interpretation of the evidence is unreasonable.  *See Burch v. Barnhart*, 400 F.3d 676, 681-82 (9th Cir. 2005) (even where evidence may also admit of an interpretation more favorable to the claimant, where the ALJ's interpretation was rational, "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989))).

Accordingly, Mr. Dinsmore's arguments fail to establish error.

### 2.    *Dennis Koukol, M.D.*

Mr. Dinsmore also contends the ALJ erred in evaluating the opinion of Dr. Koukol.  Dkt. 13 at 8.  The Court disagrees.

Dr. Koukol is a non-examining State consulting physician who reviewed Mr. Dinsmore's records and rendered an opinion in September 2012.  Tr. 97-114.  Specifically, Dr. Koukol opined that Mr. Dinsmore could occasionally lift 20 pounds and frequently lift 10 pounds; that he

could stand or walk for six hours and sit for six hours in an eight-hour workday; that he could

frequently climb ramps or stairs, balance, stoop, kneel and crouch; that he could occasionally

climb ladders, ropes, and scaffolds; that he could occasionally crawl and frequently handle and

finger. *Id.* The ALJ gave Dr. Koukol's opinion significant weight finding it consistent with

clinical observations in the medical record and with Mr. Dinsmore's activities including working

on his truck, riding his bike, walking on trails, performing household chores, performing yard

work, and caring for his daughter. Tr. 30.

In general, the opinions of treating and examining medical sources are given more weight

than those of non-examining medical sources. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.

1995). However, an ALJ must always evaluate the opinion of a non-examining source and

explain the weight given to it. Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *2.

*See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008) (weight afforded a non-

examining physician's testimony depends on the degree to which he provides supporting

explanations for his opinions [internal citations omitted]; *and see* 20 C.F.R § 404.1527(d)(3)).

Here, Mr. Dinsmore does not argue that the ALJ should have given more weight to the

opinions of treating or examining sources than to that of Dr. Koukol. Rather, he argues only that

Dr. Koukol's opinion is entitled to little weight because he did not review any evidence beyond

September 2012 and failed to account for any limitations related to Mr. Dinsmore's headaches

and sleep apnea. Dkt. 13 at 8. These arguments fail. First, the record demonstrates that Dr.

Koukol did review and consider evidence related to Mr. Dinsmore's venous sinus thrombosis,

sleep apnea and migraines. Tr. 97, 100 (indicating allegations of venous sinus thrombosis, sleep

apnea, diabetes mellitus, hypertension and migraines considered and listing migraines and sleep-

related breathing disorders as severe impairments). Moreover, Mr. Dinsmore fails to point to

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 5

any medical evidence (apart from his own discredited testimony) of functional limitations caused

by his headaches and sleep apnea that Dr. Koukol failed to consider.  Second, the mere fact that

medical records exist after September 2012 that Dr. Koukol did not review does not, without

more, undermine Dr. Koukol's opinion or the ALJ's reliance on that opinion.  *See Ludwig*, 681

F.3d at 1054 (burden is on the party claiming error to demonstrate not only the error, but also

that it affected his substantial rights); *Indep. Towers of Washington*, 350 F.3d at 929-30 ("'[a]

bare assertion of an issue does not preserve a claim'" rather "[w]e require contentions to be

accompanied by reasons"); *Woodsum v. Astrue*, 711 F.Supp.2d 1239, 1260 (W.D. Wa. May 7,

2010) ("mere fact that a non-examining physician does not have the benefit of reviewing medical

evidence made part of the record subsequent to the issuance of his or her opinion, will not

prevent that opinion from being properly adopted …").  Here, Mr. Dinsmore claims his disability

commenced in December 2010 and he does not dispute that Dr. Koukol reviewed his medical

records up to the time of his report, in September 2012.  Mr. Dinsmore fails to point to any

medical evidence post-dating Dr. Koukol's opinion that demonstrate his symptoms or

impairments changed or worsened or reflected greater limitations than those opined by Dr.

Koukol.

Accordingly, Mr. Dinsmore fails to establish the ALJ erred in giving significant weight to

Dr. Koukol's opinion.

**B.     Duty to Develop the Record**

Mr. Dinsmore argues the ALJ violated her duty to fully and fairly develop the record.

Dkt. 13 at 8.  Specifically, Mr. Dinsmore contends the ALJ erred in failing to obtain a

neuropsychological consultative examination to test his memory.  *Id.* at 9.  The Court disagrees.

It is Mr. Dinsmore's burden to prove he is disabled.  *See Mays v. Massanari*, 276 F.3d

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 6

1   453, 459-60 (9th Cir. 2001); *and see* 42 U.S.C. § 423(d)(5) ("An individual shall not be

2   considered to be under a disability unless he furnishes such medical and other evidence of the

3   existence thereof as the Commissioner of Social Security may require").  The ALJ's duty to

4   develop the record is triggered only when evidence is ambiguous or when the record is

5   inadequate to allow for proper evaluation of the evidence.  *Mays*, 276 F.3d at 461.  The Ninth

6   Circuit has determined that the ALJ's duty to develop the record is not triggered where the

7   claimant argues only that "had the ALJ developed the record, and established [a condition] she

8   would have found [the claimant] disabled."  *Id.*

9           Here, the record before the ALJ was neither ambiguous nor inadequate to allow for

10  proper evaluation of the evidence.  Mr. Dinsmore notes that the ALJ denied his attorney's

11  request at the hearing for a neuropsychological evaluation to test his memory because the ALJ

12  did not "see any need in this case for further neurological testing."  Dkt. 13 at 9; Tr. 75.  Mr.

13  Dinsmore contends this was error because counsel was requesting detailed *memory* testing, not

14  neurological testing.   Dkt. 13 at 9.  However, as the ALJ noted, there are several neurological

15  examinations in the record all of which indicate Mr. Dinsmore's recent and remote memory is

16  intact.  Tr. 509, 525, 541, 594, 597, 600, 603, 611, 614, 664, 670, 673, 679, 750, 753, 756, 760.

17  In evaluating Mr. Dinsmore's mental status the ALJ also relied on the opinions of reviewing

18  State agency psychological consultants (which Mr. Dinsmore does not challenge) who found Mr.

19  Dinsmore had no limitations in activities of daily living or maintaining social functioning, only

20  mild limitations in concentration, persistence and pace, and concluded that he did not have a

21  severe mental impairment.  Tr. 25, 82, 90, 101, 110.  Moreover, in response to counsel's question

22  at the hearing, Mr. Dinsmore acknowledged that doctors had never told him they thought

23  memory testing was necessary.  Tr. 63-64.  Mr. Dinsmore's argument that further memory

testing was necessary appears to rely solely on his own testimony that he experienced problems with his memory, as well as the lay statement from caseworker Corey Ingersoll to the same effect. Dkt. 15 at 5.  However, as discussed below, the ALJ reasonably discounted Mr. Dinsmore's credibility and her reasons for doing so apply with equal force to Mr. Ingersoll's statements.

Accordingly, the Court finds the record was not ambiguous or inadequate to permit proper evaluation of the evidence and the ALJ did not err in failing to develop the record.

**C.      Mr. Dinsmore's Credibility**

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

As a preliminary matter, Mr. Dinsmore argues, in a conclusory manner, that the Court should find the ALJ's failure to properly evaluate all of the medical evidence "tainted her evaluation of Dinsmore's testimony." Dkt. 13 at 9-10.  However, as discussed above, the ALJ did not err in evaluating the medical evidence.  Moreover, even if this were not the case such a conclusory argument is insufficient to establish error.  *See Indep. Towers of Washington*, 350 F.3d at 929-30 (a bare assertion of an issue is insufficient).  Rather a claimant must clearly link the ALJ's treatment of the medical evidence with an adverse credibility determination in order for the Court to consider whether the relationship in any given case may be material.  In this case, Mr. Dinsmore fails to do so.  Moreover, the ALJ gave several clear and convincing reasons

for discounting Mr. Dinsmore's credibility including that his testimony was inconsistent with

prior statements to medical providers as well as inconsistent with clinical findings and the

medical record as a whole.  Tr. 27-29.

In evaluating a claimant's credibility the ALJ may consider "ordinary techniques of

credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that appears less than candid."

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, the ALJ noted that although Mr.

Dinsmore testified he experienced "constant" fatigue due to his sleep apnea, on many occasions

during the relevant period Mr. Dinsmore denied fatigue to his providers.  Tr. 29, 62, 29, 317,

343, 353, 357, 381, 394, 415, 425, 435, 452, 457, 462, 465, 468, 471, 479, 482, 487, 490, 493,

493, 498, 501, 556, 782, 783, 807, 827.  The ALJ also noted that Mr. Dinsmore's testimony at

the hearing that his sleep apnea caused him to wake up every thirty minutes was inconsistent

with his statement to a provider that he woke up two to three times a night.  Tr. 29, 530.  These

inconsistencies were valid reasons to discount Mr. Dinsmore's testimony and they are supported

by substantial evidence in the record.

A determination that a claimant's complaints are "inconsistent with clinical observations"

may also satisfy the clear and convincing requirement.  *Regenniter v. Comm'r of Soc. Sec.*

*Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).  Here, the ALJ noted that although Mr. Dinsmore

testified that he had difficulty remembering, concentrating, understanding, seeing and hearing,

neurological examinations from 2011, 2012 and 2013 indicated Mr. Dinsmore had intact

memory, concentration, attention span and no gross sensory loss.  Tr. 28, 509, 525, 541, 594,

597, 600, 603, 611, 614, 664, 670, 673, 679, 750, 753, 756, 760.  This was also a valid reason to

discount Mr. Dinsmore's testimony and is supported by substantial evidence in the record.

1    The ALJ also discounted Mr. Dinsmore's testimony regarding regular debilitating

2  headaches as inconsistent with reports to his providers and the medical record as a whole.  Tr.

3  28.  "One strong indicator of the credibility of an individual's statements is their consistency,

4  both internally and with other information in the case record.... Especially important are

5  statements made to treating and examining sources and to the 'other sources....'"  SSR 96–7p.

6  Here, Mr. Dinsmore testified that he experienced debilitating headaches "a couple times a week"

7  and that they lasted anywhere from a couple of hours to a day and a half.  Tr. 51.  However, the

8  ALJ noted that the record showed that, while at times Mr. Dinsmore reported headaches, "in

9  general he did not report having headaches to treating personnel during medical visits" and

10  frequently reported "feeling well."  Tr. 28; *see Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005)

11  (an ALJ may also discount a claimant's credibility for lack of consistent treatment).  Moreover,

12  the ALJ noted that in January 2012, Mr. Dinsmore reported that his headaches had resolved, that

13  he denied headache in March 2012, and indicated that he had "much improved headache control"

14  in May 2012.[4]  Tr. 28, 346, 508, 596.  The ALJ reasonably discounted Mr. Dinsmore's testimony

15  on this basis and substantial evidence supports the ALJ's finding.  *See* Tr. 319, 346, 361, 364,

16  367, 397, 402, 411, 497, 500, 451, 456, 461, 464, 478, 481, 486, 489, 492, 497, 500, 657, 660,

17  776, 780, 790, 790, 801, 824, 835, 839, 846 (treatment notes with no headache complaint and

18  patient reported "feeling well").

19

20

---

21  [4] The ALJ also noted that Mr. Dinsmore did report some right-sided headaches occurring on and
off in late 2012.  Tr. 28, 759 (12/13/12 treatment note indicating episodes of right-sided
hemicranial headache for past 2-3 months).  However, as the ALJ noted, and Mr. Dinsmore

22  acknowledged at the hearing, the record shows that these right-sided headaches were
significantly improved and controlled with medication.  Tr. 49 (Mr. Dinsmore acknowledging

23  right-sided headaches under control with medication), 752 (hemicranial headaches significantly
improved with medication).

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 10

1        If Mr. Dinsmore were having severe headaches as regularly as he claims, it is reasonable

2   to assume that he would have frequently mentioned them when describing his overall health to

3   his providers.  *See Baunsgaard v. Colvin*, 2015 WL 143826 at *6 (D. Arizona Jan. 12, 2015)

4   (reasonable to discount complaints of frequent severe headaches where claimant failed to

5   regularly mention headaches to providers).  Thus, it was reasonable for the ALJ to find that the

6   fact Mr. Dinsmore did not regularly report headaches to his providers and instead frequently

7   reported "feeling well" called into question the credibility of his complaints.

8        Because the ALJ provide several valid reasons for questioning Mr. Dinsmore's

9   credibility, the Court need not address the other reasons the ALJ gave.  *See Carmickle v.*

10  *Comm'r, Soc. Sec. Admin*, 533 F.3d 1155 (9th Cir. 2008) (the inclusion of invalid reasons among

11  other proper reasons to discount a claimant's credibility does not negate the validity of the ALJ's

12  credibility determination).

13       Accordingly, the ALJ did not err in discounting Mr. Dinsmore's credibility.

14  **D.     Lay Testimony**

15       Mr. Dinsmore contends the ALJ harmfully erred in failing to address the lay testimony of

16  Department of Social and Health Services caseworker Corey Ingersoll.  Dkt. 13 at 15-16.  The

17  Court disagrees.

18       In March 2012 Mr. Ingersoll indicated that,

19          [Mr. Dinsmore] appears to act like he has it together more than he really

20          does, as he has obvious memory issues.  He also has issues with addition
    and time periods in his life, telling me he stayed in the hospital when first
    diagnosed but his dates are for 11 days.  He also stated he started driving

21          truck at age 25 which would [be] 1990 but he put down on the disability
    form 1976 (he would have been 11 years old), so it appears on top of his

22          daily headaches that can lead to migraines, diabetes, and sleep ap[ne]a
    there could also be a cognitive component he doesn't want to discuss, as
    he's a very large man that has taken care of himself all of these years and

23          appears he doesn't want to look less than others or be associated with
    "being on DSHS assistance."  He's trying to find employment but states

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 11

> whenever he bends over too fast he almost passes out and/or must
> constantly watch for not getting cuts as he could bleed out in minutes.
> Appears that he cannot work at any physically demanding employment,
> but he is the perfect candidate for DVR services and I've referred him
> this day.

Tr. 221.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Mr. Ingersoll's statement was competent evidence and the ALJ did err in failing to address it at all. However, the error was harmless as the ALJ gave valid reasons for discounting Mr. Dinsmore's testimony that apply with equal force to Mr. Ingersoll's lay testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [the claimant's] testimony apply with equal force to the lay testimony."). Specifically, the ALJ properly discounted Mr. Dinsmore's testimony regarding the frequency of his headaches as inconsistent with reports to providers and the medical record as a whole. Tr. 28-29. The ALJ also discounted Mr. Dinsmore's testimony of memory and concentration problems as inconsistent with neurological examinations indicating intact memory and concentration. Tr. 28. Mr. Ingersoll's statements regarding Mr. Dinsmore's impairments and limitations are essentially the same as Mr. Dinsmore's himself. Thus, although the ALJ did err in failing to address Mr. Ingersoll's lay testimony, any error was harmless.

**E.     RFC and Step Five**

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 12

1      Mr. Dinsmore contends the ALJ's RFC, and the resulting hypotheticals to the VE, did not

2    include all of his limitations.  Dkt. 13 at 16-17.  Thus, Mr. Dinsmore contends the ALJ erred at

3    step five in finding there were other jobs in the national economy that he could perform.  *Id.*

4    Mr. Dinsmore's claim is based upon his prior assignments of error regarding the ALJ's analysis

5    of the medical evidence, lay evidence, and his own credibility.  *Id.*  As discussed above, the

6    Court has found that the ALJ did not err in evaluating this evidence.  Consequently, the Court

7    finds the RFC and step five determinations were also free of error.

8                                 **CONCLUSION**

9      For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

10   case is **DISMISSED** with prejudice.

11

12      DATED this 30th day of August, 2016.

13

14

15    MARSHA J. PECHMAN
        United States District Judge

16

17

18

19

20

21

22

23

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 13